IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01620-MSK-MJW

BRENDA A. OGDEN,

Plaintiff(s),

v.

PNC BANK, a National Association,

Defendant(s).

---

## RECOMMENDATION ON
## DEFENDANT PNC BANK, N.A.'S MOTION TO DISMISS AMENDED COMPLAINT
### (Docket No. 27)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case issued by

Chief Judge Marcia S. Krieger on June 27, 2013 (Docket No. 4).

**PLAINTIFF'S ALLEGATIONS**

The operative pleading is the First Amended Complaint (Docket No. 24) in which

plaintiff raises a claim under the Real Estate Settlement Procedures Act ("RESPA"), 12

U.S.C. § 2605, asserting the following.

Defendant PNC Bank ("PNC") has a servicing contract with Fannie Mae relating

to plaintiff's loan.  In November 2012 plaintiff sent PNC a letter in which she disputed

certain errors PNC made in servicing the loan.  Specifically, the principal balance of the

loan was incorrect by over $12,500, and PNC was holding overpayments in a

"suspense account" rather than applying them to the principal as required by the Deed

of Trust.  In that November letter, plaintiff also requested documents relating to the

suspense accounts.  PNC failed to respond to that letter in the time frame required by

Colorado law.

The following month, plaintiff sent PNC a qualified written request ("QWR") in

which she (1) requested information about why PNC was changing her payment to

$709.11 and how the payment was broken down between principal, interest, and

escrow and (2) requested a reinstatement quote (which informs the borrower of the

amount to bring the loan contractually current through a certain specified date), a payoff

quote (which informs the borrower the amount required to pay off the loan in full), and a

complete loan history report (which informs the borrower how her payments have been

applied to principal, interest, escrow, and other fees).  PNC never responded to the

December 2012 QWR at all and never produced the information requested.

PNC violated RESPA by: (1) failing to respond to the December 2012 QWR

within 60 days as required by RESPA and (2) failing to provide plaintiff with information

relating to the servicing of her loan sought in the December 2012 QWR, specifically why

the payment was lowered to $709.11, what the correct amount of the monthly mortgage

payment was, a payoff quote, a reinstatement quote, and a loan history report.

PNC's failure to provide plaintiff with the information she sought was the

proximate cause of her actual damages, "including non-economic damages of

emotional distress because the Plaintiff was confused by PNC's attempts to lower her

payments, she wasn't clear what her monthly payment was supposed to be because

PNC does not send her monthly mortgage statements, the Plaintiff had knowledge that

PNC had made accounting mistakes of over $12,500 on her loan, so the Plaintiff

wanted the loan history report, reinstatement quote, and payoff quote so that she could attempt to see where PNC made the accounting mistakes so that the Plaintiff could try to show PNC where the problems existed."  (Docket No. 24 at 3, ¶ 24).  In addition, PNC has a pattern and practice of not complying with RESPA, both with plaintiff and with other borrowers around the country.  Specifically, PNC has not properly responded to at least three QWRs sent by plaintiff and three QWRs sent by Nancy Kasparzyk, who is another consumer impacted by PNC's failure to comply with RESPA.  As a result of PNC's RESPA violations, PNC is liable to plaintiff for maximum statutory damages, actual damages, reasonable attorney fees, and costs.

## MOTION TO DISMISS

Now before the court for a report and recommendation is Defendant PNC Bank, N.A.'s Motion to Dismiss Amended Complaint (Docket No. 27).  Plaintiff filed a response (Docket No. 28), and PNC filed a reply (Docket No. 30).  The court has carefully reviewed these motions papers as well as applicable Federal Rules of Civil Procedure and case law.  In addition, the court has taken judicial notice of the court file.  The court now being fully informed makes the following findings, conclusions of law, and recommendation.

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2

4

(D. Colo. Jan. 15, 2008) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Bell Atlantic Corp.</u>, 550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>  "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting <u>Bell Atlantic Corp.</u>, 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." <u>Khalik v. United Air Lines</u>, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations omitted).  The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" <u>Id.</u>  The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not

5

do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).  "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id. at 1191.

A court generally considers only the contents of the Complaint when ruling on a motion to dismiss brought pursuant to Rule 12(b)(6).  "Exceptions to this general rule include: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and 'matters of which a court may take judicial notice.'" Henson v. Bank of Am., 935 F. Supp.2d 1128, 1136 (D. Colo. 2013) (quoting Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010)). "If a plaintiff does not incorporate by reference or attach a document to its complaint, a defendant may submit an undisputably authentic copy which may be considered in ruling on a motion to dismiss." Id.

Here, PNC submitted the following exhibits with its motion to dismiss: (A) plaintiff's November 13, 2012, letter to PNC (Docket No. 27-1); (B) plaintiff's December

14, 2012, letter to PNC (Docket No. 27-2); (C) PNC's November 2, 2012, letter to

plaintiff regarding a Trial Period Plan for a mortgage modification (Docket No. 27-3);

(D) PNC's letters to plaintiff dated November 27 and December 4, 10, 20, 31, 2012, and

January 31 and February 12, 2013 (Docket No. 27-4); and (E) PNC's letter to plaintiff

dated February 22, 2013, including plaintiff's PNC Customer Account Activity Statement

dated February 15, 2013, for the activity period of 01/01/12-02/14/13 (Docket No. 27-5).

With her Response, plaintiff submits yet another document, a Notice of Mortgage

Payment Change (Docket No. 28-1) apparently filed in her case in U.S. Bankruptcy

Court.

Plaintiff's First Amended Complaint (Docket No. 24), however, refers only to her

November and December 2012 letters to PNC, which are Exhibits A and B above.  "The

court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

parties might present at trial, but to assess whether the plaintiff's complaint alone is

legally sufficient to state a claim for which relief may be granted."  County of Santa Fe v.

Public Serv. Co., 311 F.3d 1031, 1035 (10th Cir. 2002).  Therefore, the court will not

consider the other exhibits (C through E) attached to PNC's motion and the Notice

(Docket No. 28-1) attached to plaintiff's Response because doing so would convert the

motion into one for summary judgment.

"The purpose of RESPA is to make sure that consumers receive information

regarding the nature, settlement costs, and servicing of home loans."  Henson, 935 F.

Supp.2d at 1144 (citing 12 U.S.C. § 2601(a)).  "Under RESPA, a servicer of a "federally

related mortgage loan,' as [PNC] is here, 'may be liable for damages to a borrower if it

fails to adequately respond' to a QWR."  Christenson v. Citimortgage, Inc., 2013 WL

5291947, at *4 (D. Colo. Sept. 18, 2013).  The loan servicer, here PNC, generally must

provide a written response acknowledging a QWR from a borrower within five days.  Id.

(citing 12 U.S.C. § 2605(e)(1)(A)).  "Within thirty days of receiving the QWR, it

"generally must investigate and make appropriate corrections to the borrower's account,

provide a written notification of any correction or an explanation why no correction was

necessary, and provide a contact number for a representative."  Id. (quoting Berneike v.

CitiMortgage, Inc., 708 F.3d 1141, 1145 (10th cir. 2013)).  "If the lender fails to comply

with a QWR, the borrower is entitled to any actual damages [caused by] the failure; and

. . . any additional damages, as the court may allow, in the case of a pattern or practice

of noncompliance with the requirements of this section, in an amount not to exceed

$1,000."  Henson, 935 F. Supp.2d at 1144 (quoting Albury v. America West Bank, 2011

WL 902617, at *2 (D. Utah Mar. 15, 2011)).

    The court notes that in its motion, PNC arguments address both plaintiff's

November 2012 and her December 2012 letters.  The court, however, will not address

PNC's arguments regarding the November letter because plaintiff's RESPA claim

contained in her First Amended Complaint, in contrast to her original Complaint, is

based solely on her December 2012 letter.

    "[A] letter cannot be 'qualified' under the statute if it does not relate to the

servicing of the account."  Id. (quoting Harris v. American Gen. Fin., Inc., 2005 WL

1593673, at *3 (D. Kan. July 6, 2005)).  The statute defines "servicing" as "receiving any

scheduled periodic payments from a borrower pursuant to the terms of any loan,

including amounts for escrow accounts . . . and making the payments of principal and

interest and such other payments with respect to the amounts received from the

borrower as may be required pursuant to the terms of the loan."  12 U.S.C. § 2605(i)(3).

To the extent plaintiff's RESPA claim is predicated on requests that are not directed to

the "servicing" of plaintiff's loan, those portions of the RESPA claim must be dismissed.

Henson, 935 F. Supp.2d at 1145.

Here, PNC asserts that the plaintiff's December 2012 letter was not a QWR

because it primarily requested information regarding the trial payment plan that was

sent to plaintiff as part of a loan modification.  See Christenson v. Citimortgage, Inc.,

2013 WL 5291947, at *4 (inquiries regarding loan modification do not constitute a QWR)

(citing cases).  PNC contends that a trial payment plan was not part of plaintiff's

scheduled period payments (as used in the definition of "servicing"), but instead was the

starting point for any potential loan modification, and as explained in the trial payment

plan letter, the plan must be formally accepted by the borrower and does not modify the

borrower's outstanding loan obligations unless accepted by the borrower.  Therefore,

because plaintiff's request regarding the trial payment plan did not relate to the servicing

of plaintiff's loan, but rather to the potential modification of plaintiff's payments, it

allegedly was not a QWR subject to RESPA.

As noted above, however, this court will not consider the trial payment plan letter

submitted by PNC or the Notice of Mortgage Payment Plan submitted by plaintiff in

response.  A review of the plaintiff's December 2012 letter referenced in the First

Amended Complaint shows that it makes no specific reference to a loan modification, a

trial payment plan letter, or the Notice of Mortgage Payment Plan filed in her bankruptcy

case.  Instead, she merely generically refers to "correspondence" from PNC, stating:

I am writing to seek information about the servicing of my loan and also to

dispute certain errors with my loan that I believe your company has made.

**First, I recently received correspondence from you stating that my monthly mortgage payment would be changing from $993.16 to $709.11 effective December 1, 2012.**

**I would like to know why you are attempting to lower my payments to $709.11?  From my calculations, this would basically be the same as an interest only loan, which I never requested from your company, so I am confused why you are trying to lower my payments.**

**Could you please tell me how the $709.11 was calculated, and how it is broken down between principal, interest , and escrow?**

I have been paying $1,065 per month on my mortgage payment because I keep getting different payment amounts from your company.  Therefore, can you please tell me how much my current mortgage payment is and how it is broken down between principal, interest, and escrow?

Also, could you please provide me with a complete loan history report, a reinstatement quote, and a payoff quote?

Finally, I sent your company a letter on November 13, 2012, via certified mail, to which I have not received an adequate response.  I will give your company until December 21, 2012 to respond or I will have no other choice other than to resort to litigation.

(Docket No. 27-2) (emphasis added).  Since the court must accept all well-pled factual allegations in the First Amended Complaint as true and resolve all reasonable inferences in the plaintiff's favor, and since the pleading does not make any specific reference to a loan modification, a trial payment plan, or an identified piece of correspondence, the court cannot at this time recommend dismissal of the part of the plaintiff's RESPA claim that is directed to plaintiff's inquiry concerning the reduced loan payment.

Furthermore, in addition to seeking information regarding that change in payment, plaintiff also sought other specific information and documentation in her

10

December 2012 letter, namely, what her current payment is and how it is broken down,

a complete loan history report, a reinstatement quote, and a payoff quote.  This

requested information is conveniently not mentioned by PNC in its motion.  Such

information concerns the servicing of plaintiff's loan and thus, contrary to PNC's

assertion in its Reply, constitutes a QWR under RESPA.[1]  See Henson, 935 F. Supp.2d

at 1145 (letters did request information regarding the servicing of the plaintiff's loan,

e.g., a loan history report, a payoff quote, and the date defendant took over servicing of

the loan).  This court thus does not recommend dismissal of the RESPA claim on the

basis that plaintiff did not make a QWR subject to RESPA.

"To recover actual damages pursuant to § 2605(f)(1)(A), [plaintiff] must

adequately plead a causal link between [her] claimed damages and the specific RESPA

violation committed by" PNC.  Id.   In the First Amended Complaint, plaintiff asserts the

following with respect to actual damages:

> 22.  The Defendant's failure to provide the Plaintiff with the information
> she sought was the proximate cause of the Plaintiff's actual damages,
> including non-economic damages of emotional distress because the
> Plaintiff was confused by PNC's attempts to lower her payments, she
> wasn't clear what her monthly payment was supposed to be because PNC
> does not send her monthly mortgage statements, the Plaintiff had
> knowledge that PNC had made accounting mistakes of over $12,500 on
> her loan, so the plaintiff wanted the loan history report, reinstatement
> quote, and payoff quote so that she could attempt to see where PNC

---

[1]In its Reply, PNC asserts that it responded to plaintiff's servicing-related requests contained in the December 2012 letter.  (Docket No. 30 at 2).  As stated above, however, in issuing this recommendation on the 12(b)(6) motion, this court cannot consider PNC's letters that are not referenced in the plaintiff's pleadings. Furthermore, even if the court were to convert the 12(b)(6) motion to a summary judgment motion, based on the record, there is a genuine issue of material fact as to whether PNC did respond, in whole or in part, to such requests as opposed to only the requests made in plaintiff's November 2012 letter.

> made the accounting mistakes so that Plaintiff could try to show PNC
> where the problems existed.

(Docket No. 24 at 3, ¶¶ 22).  PNC argues that plaintiff has not and cannot allege

damages caused by an alleged failure to respond which can be compensated under

RESPA because plaintiff does not allege any economic damage or loss.[2]  Instead,

plaintiff merely alleges actual damages for "emotional distress because Plaintiff was

confused . . . . "  (Docket No. 24, ¶ 22).  The Tenth Circuit does not seem to have

spoken to the issue of the scope of actual damages under RESPA.  Chief Judge

Krieger, however, has indicated that a RESPA claim permits only the award of actual

economic damages compared to damages for emotional distress.  Everard v. Colorado

Housing Auth. & Fin., 2013 WL 435029, at *3 (D. Colo. Feb. 5, 2013) (court could not

find a likelihood of relief in part because some of the plaintiff's claims, including RESPA,

12 U.S.C. § 2605(f)(1)(A), permitted only the award of actual economic damages

compared to damages for emotional distress or inconvenience).  But see Catalan v.

GMAC Mort. Corp., 629 F.3d 676, 696 (7th Cir. 2011) (plaintiff's testimony regarding

emotional distress was an issue of damages for the jury); Lacey v. Ocwen Loan

Servicing, LLC, 2014 WL 2885471, at *3 (D. Kan. June 25, 2014) (allegation of actual

damages of emotional distress sufficient to satisfy the actual damage requirement); In

re Payne, 387 B.R. 614, 639 (Bankr. D. Kan. 2008) (actual damages may include

recovery for emotional distress); Wright v. Litton Loan Servicing LP, 2006 WL 891030,

---

[2]PNC includes in this argument assertions that involve its responses to plaintiff's letters.  As indicated in the text above, however, this court will not consider those responses with respect to PNC's 12(b)(6) motion because the responses are not even referenced in the First Amended Complaint.

at *4 (E.D. Pa. Apr. 4, 2006) (actual damages include non-economic losses such as

emotional distress); In re Thompson, 350 B.R. 842, 851 (Bankr. E.D. Wis. 2006) (actual

damages allowable under RESPA include recovery for emotional distress); Ploog v.

HomeSide Lending, Inc., 209 F. Supp.2d 863, 869-70 (N.D. Ill. 2002) (finding that

RESPA is a consumer protection statute and its actual damages provision includes

recovery for emotional distress); Johnstone v. Bank of Am., N.A., 173 F. Supp.2d 809,

816 (N.D. Ill. 2001) (plaintiff's claim for mental suffering stated a claim for actual

damages under RESPA).   Therefore, plaintiff's claim for actual damages should be

dismissed.

      With regard to plaintiff's claim for statutory damages under RESPA based upon a

"pattern or practice of non-compliance" with RESPA, see 12 U.S.C. § 2605(f), PNC

asserts that plaintiff has not alleged sufficient facts to demonstrate a plausible claim for

relief.   With respect to PNC's alleged pattern or practice, plaintiff merely asserts the

following in her pleading:

> 23.   The Defendant has a pattern and practice of not complying with
> RESPA both with the Plaintiff and with other borrowers around the
> country.   Specifically, the Plaintiff has sent PNC in the past at least 3
> QWRs that were never properly responded to.   PNC also failed to respond
> to 3 QWRs with Nancy Kasparzk, who is another Colorado consumer
> impacted by PNC's failure to comply with RESPA.

PNC argues that the six alleged QWRs identified above are not sufficient to assert that

it engaged in a pattern or practice.   PNC notes that three of those letters were allegedly

sent by plaintiff and include the two letters that are the subject of this case to which

PNC responded.   PNC further claims that the other three alleged letters are the subject

of another lawsuit in this district that was dismissed without prejudice, Kaspryzk v. PNC

Bank, N.A., No. 13-cv-00247-RBJ-KMT (D. Colo. July 29, 2013) (Docket No. 24).

In response, plaintiff asserts that the phrase "pattern or practice" is not defined in

RESPA and that case law has established two different interpretations of the meaning

of the phrase.  According to plaintiff, the first approach holds that a plaintiff would have

to prove that she sent multiple letters over and over again to the defendant and that the

defendant improperly responded to each one.  (Docket No. 28 at 7, comparing Ploog,

209 F. Supp.2d 863 (failure to respond to five QWRs was a pattern or practice) with In

re Thompson, 350 B.R. 842 (failing to respond to five QWRs was not a pattern or

practice).  Plaintiff contends that requiring a plaintiff to keep resending letters over and

over and over again to the servicer, only to have the servicer send non-compliant letters

time and time again, makes little sense.  Plaintiff asserts that the second approach,

which she believes is the correct approach, holds that pattern or practice means a

standard or routine way of operating.  (Docket No. 28 at 7, citing Cortez v. Keystone

Bank, Inc., 2000 WL 536666, at *10 n.12 (E.D. Pa. 2000)).  Plaintiff asserts that this

"second approach makes the most sense because it would eliminate the need for the

Plaintiff to waste time and energy to keep sending the same letter over and over and

over again, and would also save PNC time and energy from having to send out the

same non-response time and time again.  Accordingly, the Plaintiff requests

determination as to which definition of "pattern and practice" this Court will apply, and

requests that the Court adopt the second approach outlined in Cortez, which was also

cited with approval by a Massachusetts court, see In re Maxwell, 281 B.R. 101, 123

(Bankr. D. Mass. 2002)."  (Docket No. 28 at 8).

In any event, plaintiff asserts that regardless of which definition this court applies,

whether PNC has a pattern or practice of non-compliance should not be determined on

a 12(b)(6) motion.  Plaintiff claims that if the first approach is adopted, she believes she

can put on evidence of at least six other letters involving herself and another Colorado

consumer where PNC failed to respond to the borrower's letters.  Furthermore, plaintiff

contends that discovery would likely result in even more instances of non-compliance.

If, however, this court were to adopt the second approach, then plaintiff asserts she

should be permitted to take discovery on PNC's policies and procedures on compliance

with responding to QWRs under RESPA.

PNC, however, responds in its Reply that the First Amended Complaint fails to

allege sufficient facts to establish a pattern or practice under either of these tests.

As the First Amended Complaint stands now, this court agrees with PNC.  See Henson,

935 F. Supp.2d at 1145-46 (citing Givant v. Vitek Real Estate Indus. Grp., Inc., 2012 WL

5838934, at *4 (E.D. Cal. Nov. 15, 2012) (holding that a plaintiff "seeking statutory

damages 'cannot rely simply on stock conclusions, but must allege facts that are

sufficient to raise a right to relief above the speculative level'")); Davis v. Greenpoint

Mortgage Funding, Inc., 2011 WL 7070222, at *5 (N.D. Ga. Sept. 19, 2011) (allegation

that defendant "demonstrated that its general policy was not to prove the type of

information sought [in Plaintiff's correspondence] and "has made it a practice, based on

the above policy, not to comply with the [QWR] provisions" were conclusory and

insufficient to permit the "pattern or practice" claim for statutory damages to survive the

motion to dismiss).

"[C]ourts have interpreted the term 'pattern or practice' in accordance with the

usual meaning of the words."  McLean v. GMAC Mortgage Corp., 595 F. Supp.2d 1360,

15

1365 (S.D. Fla. 2009). "'The term suggests a standard or routine way of operating.'" Id. Here, while plaintiff claims in the paragraph quoted above regarding statutory damages that she sent at least three QWRs which were not properly responded to by PNC, she details only two such alleged QWRs in her pleading. Two RESPA violations, however, are insufficient to support a pattern or practice of noncompliance as required by section 2605(f). See id. (failure to respond to two QWRs was insufficient); Roth v. CitiMortgage Inc., 2013 WL 5205775, at *8 (E.D.N.Y. Sept. 11, 2013) (plaintiff sent three letters to defendant - two of which were identical; defendant's failure to respond in accordance with RESPA on two occasions to practically identical letters did not establish that it was defendant's "pattern or practice" to violate the statute); Selman v. CitiMortgage, Inc., 2013 WL 838193, at *10 (S.D. Ala. Mar. 5, 2013) ("plaintiff's suggestion that the Second Amended Complaint adequately alleges a pattern and practice by referring to two instances in which CitiMortgage failed timely to respond to QWRs is legally infirm."); In re Maxwell, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (evidence of two RESPA violations was insufficient to support a pattern or practice). Plaintiff's allegations regarding another consumer are also conclusory and insufficient to allow a "pattern or practice" claim for statutory damages to survive PNC's motion to dismiss. Evidence of RESPA violations with just two consumers would not be a pattern or practice of violations.

Based on the above, this court finds that plaintiff has failed to state a plausible claim for either actual or statutory damages. Therefore, her RESPA claim should be dismissed.

**WHEREFORE,** for the foregoing reasons, it is hereby

16

**RECOMMENDED** that Defendant PNC Bank, N.A.'s Motion to Dismiss Amended Complaint (Docket No. 27) be granted.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: July 14, 2014                    s/ Michael J. Watanabe
      Denver, Colorado                Michael J. Watanabe
                                 United States Magistrate Judge